IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PETER BRUNI, et al.  :  CIVIL ACTION
:
   v.  :
:  No. 11-2017
OCEANVIEW ELECTRONICS,  :
INC., et al.  :

**MEMORANDUM**

Ludwig, J.  July 20, 2012

This is a Securities Action; jurisdiction is federal question. 28 U.S.C. § 1331. Defendants move for "Reconsideration of Denial of Their Rule 12(b) Motion to Dismiss Amended Complaint" (docket no.39). A summary of the fact basis for plaintiffs' claims as well as the basis for the denial of the motion to dismiss is set forth in the Memorandum of March 23, 2012 (docket no. 36). The reconsideration motion will be granted in part in that Count II of the amended complaint will be dismissed. Otherwise, it will be denied.[1]

---

[1] "'A motion for reconsideration is a device of limited utility. The purpose of a motion for reconsideration under Fed. R. Civ. P. 59(e) is to correct manifest errors of law or fact or present newly discovered evidence. A motion for reconsideration will be granted if the moving party can demonstrate one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available previously; or (3) the need to correct a clear error of law or fact to prevent manifest injustice. . . . To show clear error or manifest injustice, the moving party "must base its motion on arguments that were previously raised but were overlooked by the Court." However, "parties are not free to relitigate issues that the Court has already decided."'" *In re* Actiq Sales and Marketing Practices Litig., 2012 WL 2135560, at *2 (E.D. Pa., Jul. 12, 2012) (citations omitted).

**Statute of Limitations**

On reconsideration defendants' position is that the claims as to the purchase of a convertible note were absolutely time-barred, the purchase having occurred more than five years prior to the commencement of this action. 28 U.S.C. § 1658(b)(2).[2] Plaintiffs' response is that they converted the loans into common stock well within the statute of repose.

According to the amended complaint, after the initial 2004 investment, plaintiffs received interest payments under the terms of the notes through 2007, but none thereafter. Amended complaint, ¶¶ 27, 33, 39. In May, 2008, plaintiffs converted $300,000 of the $400,000 VEI#1 investment into common stock.[3] Amended complaint, ¶ 37. In July, 2009, plaintiffs were

---

[2] Section 1658(b)(2): "Notwithstanding subsection (a), a private rights of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 34(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of -

(1) 2 years after the discovery of the facts constituting the violation; or

(2) 5 years after such violation."

28 U.S.C. § 1658(b).

[3] According to the amended complaint, "VEI Technologies, Inc. is a Florida corporation. Upon information and belief, VEI Technologies, Inc. is a successor company to Valhalla Enterprises, Inc. and was formed in large part to defraud the Brunis and/or others out of the monies they had invested in Valhalla Enterprises, Inc. . . . In this Complaint, Valhalla Enterprises, Inc. and VEI Technologies, Inc. will be referred to as 'VEI#1' and 'VEI#2' respectively." Amended complaint, ¶ 4.

notified of an assignment for the benefit of creditors of VEI#1. Amended complaint, ¶ 83. It is unclear whether any "violation" happened before the 2008 conversion of the note to stock. The denial of defendants' motion must be upheld.

**UTP/CPL**

It is also defendants' position that claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law must be dismissed because: (1) plaintiffs are not "consumers," and (2) securities are not "goods" under that act. Algrant v. Evergreen Valley Nurseries, Ltd., 126 F.3d 178, 186-88 (3d Cir. 1997).

As to the first point, the amended complaint specifically alleges "[t]he Brunis purchased financial services and/or investment products primarily for personal, family or household purposes." Amended complaint, ¶ 164. This adequately satisfies the requirement that plaintiffs are consumers under the act.[4]

---

[4] Under 73 Pa.C.S.A. § 201-9.2, a private right of action exists where the purchase at issues is "primarily for personal, family, or household purposes." 73 Pa.C.S.A. § 201-9.2. Defendants cite Lebovic v. Nigro, 1996 WL 179982, at *7-8 (E.D. Pa., Apr. 15, 1996). There, plaintiff entered into an agreement with defendant in which he put up cash and defendant real property for the parties' joint operation of optometry stores. Id. at *1. It was found to be a business venture, rather than a personal investment. Plaintiff was not a consumer under the act and his UTP/CPL claim was dismissed. Id. at *7-8. In contrast, here, the amended complaint here alleges that plaintiff-husband is an electrician, plaintiff-wife a nurse, and their investment was for personal

As to the second: "[i]nvestment securities are not goods under the UTP/CPL and therefore the UTP/CPL does not provide a cause of action for a party alleging fraud in the securities themselves." Algrant, 126 F.3d at 187. "The sale of investment securities, however, can qualify as 'services' under the UTP/CPL if fraud existed in the transaction in which the security was purchased." Cehula v. Janus Distributors, LLC, 2008 WL 2890874, at *4 n.20 (W.D. Pa., Jul 23, 2008), citing Baker v. Summit Bank, 64 F.Supp.2d 466, 468 (E.D. Pa. 1999)("securities are not 'goods' in the usual sense of the word and for their sale to be actionable as 'services,' the fraud must be in the transaction, not in the securities themselves.").

It is correct that the UTP/CPL creates a private cause of action if the fraud existed in the transaction itself, rather than in the securities: cases "in which the alleged violation of the UTP/CPL was committed by a brokerage house customarily selling the securities of third parties." Algrant, 126 F.3d at 187. Here, defendants are not alleged to have been brokers, but instead officers and co-owners of the investment businesses and the businesses themselves. See, e.g., amended complaint, ¶¶ 5-7. Moreover, these investments were made through Michael Bader, a broker who is not a party to this action. Defendants cannot be said to have provided "services."

---

purposes. Amended complaint, ¶¶ 12, 13, 164.

Because the allegations of fraud and deceit are in regard to the value of plaintiffs' investments, and not in the transactions resulting in their purchase, the pleading does not state a claim under the UTP/CPL, and Count II of the amended complaint must be dismissed.

The rest of defendants' motion for reconsideration has already been rejected and will be denied. "It is improper on a motion for reconsideration to ask the court to rethink what it has already thought through - rightly or wrongly." <u>Lischner v. Upper Darby Twp.</u>, 2007 WL 2173393, at *1 (E.D. Pa., Jul. 27, 2007) (citations omitted).

          BY THE COURT:

          /s/ Edmund V. Ludwig
          Edmund V. Ludwig, J.